**VAUGHN MACHINERY COMPANY, Petitioner,**

v.

**RENEGOTIATION BOARD, Respondent.**

**No. 13818.**

United States Court of Appeals
Sixth Circuit.

Dec. 31, 1959.

---

Walter E. Barton, Washington, D. C. (Karl K. Morris, Cleveland, Ohio, on the brief), for petitioner.

James H. Prentice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Samuel D. Slade, Atty., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before SHACKELFORD MILLER, Jr., and WEICK, Circuit Judges, and WILLIAM E. MILLER, District Judge.

PER CURIAM.

Following a unilateral determination of the Renegotiation Board that the petitioner received excess profits in the amount of $200,000.00 for the taxable year 1952, petitioner sought a redetermination thereof by the Tax Court of the United States. Section 1218, Title 50, U.S.C.A.Appendix. The Tax Court made a redetermination in the same amount. Petitioner seeks a review of the decision of the Tax Court. Section 1218a, Title 50, U.S.C.A.Appendix.

Petitioner concedes that under the statutes above referred to, the amount of such excess profits as determined by the Tax Court is not reviewable. Our review is limited to the ruling of the Tax Court, as a matter of law and contrary to petitioner's contention, that the exemption provisions of the Renegotiation Act of 1951 are not applicable to the transactions under consideration. Section 1216, Title 50, U.S.C.A.Appendix.

Detailed Findings of Fact and Conclusions of Law of the Tax Court are reported in 30 T.C. 949, to which reference is made for a more complete statement than is given herein. The following summary is sufficient for our present purposes.

Petitioner, The Vaughn Machinery Company, an Ohio corporation, is engaged in the manufacture and sale of wire drawing machinery. In 1951 it received orders from seven customers for the manufacture and delivery of 101 machines. The machines were delivered to petitioner's customers in 1952. Each had a useful life of twenty-five years.

At the time the orders were given, petitioner's seven customers were under prime facilities contracts with the Signal Corps of the U. S. Army to manufacture or procure the 101 machines for the manufacture of stainless steel wire used in the production of Signal Corps' communications cable. Stainless steel wire is comparatively difficult to manufacture. At that time the requirements of the Signal Corps exceeded by several times existing productive capacity. Under these contracts, title to the 101 machines was to vest in the Government upon acquisition or installation of the machines in the respective plants of petitioner's customers.

Under the prime contracts the machines could, under stated conditions, be leased by the Government to the contractors or others for commercial production. Most, but not all, of the machines were leased by the Signal Corps to said respective customers. The leases permitted full-scale commercial production on a 24-hour per day basis. All leases were terminable on unilateral notice by the Government in case of mobilization.

The customers made little or no use of the machines in 1952 for commercial pur-

poses. In the years subsequent to 1952, during which the leases were operative, the leased machines were used for commercial purposes only a portion of the time, ranging from 1.7% for 34 machines leased to Crucible Steel Co. to 5.5% for 26 machines leased to Allegheny Ludlum Steel Corporation, 31.95% for 10 machines leased to Sylvania Electric Products, Inc., and 36.67% for 12 machines leased to Alloy Metal Wire Company, Inc.

Section 1216(c) (1), Title 50, U.S.C.A. Appendix, provides that the provisions of the Renegotiation Act shall not apply to receipts or accruals from subcontracts for new durable productive equipment except to a limited extent, which in the present case would be one-fifth. Petitioner contends that the exemption is applicable to the foregoing transactions. However, Sec. 1216(c) (2) (B) provides that the term "subcontracts for new durable * * * equipment" does not include "subcontracts where the purchaser of such durable productive equipment has acquired such equipment for the account of the Government." Since the title to the machines in the present case vested in the Government upon the installation of the machines in the plants of the petitioner's customers, this section of the statute makes the exemption inapplicable.

Petitioner contends that in purchasing the machines and leasing them for commercial production in the present case, the Government departed from its governmental function and became engaged in a private business for profit, the same as any private person; that the taking of title to the machines by the Government was a mere formality without substance or reality; and that the Court should look through the form of the transaction to the substance and resolve the issue as though title to the machines had not vested in the Government.

The Tax Court rejected this contention, holding that there was no ambiguity in the statute which provided that the exemption was not applicable to subcontracts whereby the purchaser acquired equipment for the account of the Government, that the purchases in the present case were clearly for the account of the Government, and it was not justified to disregard the plain wording of the statute.

As the Government points out, petitioner's argument is based largely upon the factual contention that the Government's major purpose in acquiring title to the machines was not primarily to insure the production of military wire, but was primarily to lease the machines to petitioner's customers solely for use in full scale commercial production on a 24-hour per day basis. This contention is not sustained by the evidence, which shows that the machines were purchased to produce stainless steel wire required by its Spiral Four Program and that the use for commercial production was permissive only, subject to being terminated on unilateral notice by the Government in case of mobilization. All of the machines were not leased, and the ones that were leased were not used in full scale commercial production on a 24-hour per day basis. In fact, on an overall basis, only a small per cent of the total time was devoted to commercial production. In our opinion, this is not a case where the form of the contract incorrectly reflects the substance of the agreement. We agree with the ruling of the Tax Court.

The decision of the Tax Court is affirmed.